UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
LYNN B. CHAPERON, as Parent and Natural      :
Guardian of A.J.C.B., and LYNN B. CHAPERON,  :
Individually, et al.,                        :          24-CV-05135 (JAV)
                               Plaintiffs,   :
                                             :          OPINION AND ORDER
                                             :
          -v-                                :
                                             :
DAVID C. BANKS, in his official capacity as  :
Chancellor of the New York City Department of :
Education, and the NEW YORK CITY             :
DEPARTMENT OF EDUCATION,                     :
                                             :
                               Defendants.   :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

A group of parents and guardians brought this action individually, and on

behalf of their respective children (the "Students"), seeking an order confirming the

Students' educational placement at the International Institute for the Brain

("iBRAIN") for the 2024-2025 school year ("SY"), and immediate funding for tuition

and related services under the "stay-put" provision of the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j).  Defendants, the New York

City Department of Education ("DOE") and David C. Banks in his official capacity

as Chancellor of DOE (collectively, "Defendants"), have not disputed that iBRAIN is

the appropriate educational placement for the Students and have made tuition

payments in the ordinary course consistent with *Mendez v. Banks*, 65 F.4th 56 (2d

Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024).

While this action was pending, the 2024-25 extended SY came to an end, and DOE remitted all remaining tuition payments for the Students for the past academic year. Accordingly, Plaintiffs' claims with respect to educational placement and tuition are dismissed as moot. With respect to their claims related to nursing and transportation services, Plaintiffs' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

### A. Individuals with Disabilities Education Act

IDEA requires states that receive federal special education funding to provide children with disabilities "a free appropriate public education ["FAPE"] in the least restrictive environment suitable for the child." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 150 (2d Cir. 1992) (cleaned up); *see also* 20 U.S.C. § 1400(d)(1)(A). IDEA establishes "formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 154 (2017).

Under IDEA, parents of such students are guaranteed "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988). "Parents are specifically entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provisions of a free appropriate public education.'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514

F.3d 240, 245 (2d Cir. 2008) (citing 20 U.S.C. § 1415(b)(6)(A)), *abrogation on other grounds recognized by Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 (2d Cir.), *cert. denied*, 145 S. Ct. 570 (2024).

New York has adopted a two-tier administrative system for review of a parent's due process complaint ("DPC"). *Id.* First, an impartial hearing officer ("IHO") is appointed by the local board of education or competent state agency to conduct the initial hearing and issue a written decision. *Id.* That decision can be appealed to a state review officer ("SRO") of the New York Education Department. *Cave,* 514 F.3d at 245 (citing *Heldman*, 962 F.2d at 152). "Only after exhaustion of these procedures has an aggrieved party right to file suit in a federal or state court." *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)).

IDEA provides that, "during the pendency of any proceedings," the child is entitled to "remain in [their] then-current educational placement" at public expense. 20 U.S.C. § 1415(j). This so-called "pendency" or "stay-put" provision ensures that, if parents "prevail on their administrative complaint, they may seek retroactive reimbursement from the school district for the cost of tuition and certain school-related services." *Mendez*, 65 F.4th at 59. Section 1415(j) operates as "'in effect, an automatic preliminary injunction,' given that it 'substitutes an absolute rule in favor of the status quo'—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of

hardships." *Id.* at 62 (quoting *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)).

"The term 'educational placement' refers only to the general type of educational program in which the child is placed." *Concerned Parents and Citizens for the Continuing Educ. at Malcolm X (P.S. 79) v. N.Y.C. Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980). "That is, the pendency provision does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers while his administrative and judicial proceedings are pending. Instead, it guarantees only the same general level and type of services that the disabled child was receiving." *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014).

## B. The Students

This motion for summary judgment was brought by the parents and guardians of four[1] of the student plaintiffs: A.C., D.C., A.F., and O.C. ECF No. 103 ("MSJ Br."). Each of these Students were enrolled at iBRAIN for the 2024-25 extended SY, which ran from July 2, 2024, through June 27, 2025. ECF No. 61-1 at 34-40; ECF No. 61-3 at 32-38; ECF No. 61-5 at 43-49; ECF No. 61-9 at 34-40. Each of these Students also had contracted with Sisters Travel and Transportation Services, LLC ("Sisters Travel") to provide transportation to and from the school for

---

[1] The Complaint asserted claims on behalf of a fifth student, L.V.F., but Plaintiffs have represented that those claims are now resolved. Defendants have fully funded L.V.F.'s placement at iBRAIN and request no relief as to this student. *See* MSJ Br. at 1 n.1.

the 2024-25 academic year.  ECF No. 61-1 at 41-47; ECF No. 61-3 at 39-45; ECF No.
61-5 at 50-56; ECF No. 61-9 at 41-47.

On July 2, 2024, each Plaintiff filed a DPC against DOE, alleging, among
other things, that DOE did not offer their respective child a FAPE for the 2024–
2025 extended SY.  ECF No. 61-1 at 2-11; ECF No. 61-3 at 2-10; ECF No. 61-5 at 2-
10; ECF No. 61-9 at 2-9.  iBRAIN was the pendency program placement for each of
the Students for the 2024-25 extended SY.

### 1.  A.C. (IHO Case No. 277023)

A.C.'s pendency placement was based on an SRO decision for the 2023-24
academic year, which established iBRAIN as A.C.'s then-current educational
placement and mandated that DOE provide A.C. with transportation.  ECF No. 96-
1.

On September 17, 2024, an IHO issued a Findings of Fact and Decision
("FOFD") with respect to A.C.'s DPC.  ECF No. 61-2.  In the FOFD, the IHO ordered
DOE to pay tuition directly to iBRAIN for the 2024-25 extended SY and pay Sisters
Travel for a portion of A.C.'s use of the transportation service.  *Id.*

A.C.'s parent appealed the IHO's decision with regard to transportation.
ECF No. 104-1.  On January 24, 2025, the SRO rendered its decision.  *Id.*  The SRO
noted that neither party had appealed from the portion of the FOFD that
established A.C.'s placement at iBRAIN, which rendered that aspect of the IHO
decision final.  *Id.*  The SRO upheld the parents' appeal insofar as the FOFD did not

require DOE to fund the entire cost of transportation services under the contract with Sisters Travel.  *Id.*

The time to appeal this decision has expired.  ECF No. 130 ("Hr'g Tr."), at 8:21-23.  Plaintiffs concede that all tuition and transportation costs have been paid for student A.C., except for late fees.  *Id.* at 7:25-8:1.

### 2.  D.C. (IHO Case No. 277231)

D.C.'s Pendency Order was issued on August 30, 2024.  ECF No. 61-6.  Pursuant to the Pendency Order, the DOE was required to "fund Student's" tuition at iBRAIN and fund D.C.'s use of a private transportation agency until "until such time as the DOE demonstrates to this tribunal (or any appellate tribunal with jurisdiction over appeals from this case) that the DOE is able to begin providing the transportation services outlined in the FOFD in Case No. 250961."  *Id.* at 5.  Although the FOFD from Case No. 250961 was referenced as an exhibit to the FOFD in Case No. 277231, neither party submitted a copy of it to this Court.

An FOFD with respect to D.C.'s DPC for the 2024-25 SY was issued on November 12, 2024.  ECF No. 112 ("Kapoor Decl."), ¶ 8.  This decision was appealed to the SRO on December 10, 2024, thus continuing pendency.  *Id.*  According to Defendants, the SRO decision for D.C. was issued on May 20, 2025, and the time to appeal this decision has not yet expired.  Hr'g Tr. 26:3-4.  A copy of this SRO decision has not been provided to the Court.

### 3. A.F. (IHO Case No. 277101)

A.F.'s Pendency Order was issued on September 4, 2024. ECF No. 61-4. The basis of pendency stemmed from an FOFD for the 2023-24 academic year issued on December 27, 2023. *Id.* at 7. That prior FOFD had, *inter alia*, ordered the DOE to: 1) "fund the costs of the Student's 2023-2024 school year placement and related services" consistent with the contract with iBRAIN; and 2) fund A.F.'s transportation costs to and from iBRAIN and all related service providers facilities. *Id.* at 4-5.

The Pendency Order requires DOE to fund A.F.'s tuition and transportation during the pendency period. *Id.* Student A.F. has a nursing service agreement with B&H Health Care Services, Inc. ("B&H"). ECF No. 61-3 at 46-53. The IHO found, however, that the prior FOFD upon which pendency was based contained no specific reference to nursing services, only "related service." ECF No. 61-4 at 7. The IHO therefore denied A.F.'s request that the Pendency Order explicitly include nursing services, and instead limited funding to "related services." *Id.*

An FOFD was issued with respect to A.F.'s DPC on November 1, 2024. Kapoor Decl., ¶ 7. This FOFD was appealed to the SRO on or about November 26, 2024, thus continuing pendency. *Id.* The parties have informed the Court that an SRO decision was issued for A.F. on April 9, 2025, Hr'g Tr. at 4:5-8, but a copy of the SRO decision likewise has not been submitted to the Court.

### 4. O.C. (IHO Case No. 277135/284069)

On August 20, 2024, the IHO dismissed O.C.'s original DPC due to, *inter alia*, Plaintiffs' failure to appear at a resolution meeting and Plaintiff's failure to respond to the DOE's motion to dismiss. Kapoor Decl., ¶ 9. On August 22, 2024, O.C. filed another DPC. ECF No. 96-2 at 2. On November 18, 2024, a Pendency Order was issued. ECF No. 96-2. Pendency was based upon SRO decision 23-302, issued on February 8, 2024, with respect to the 2023-24 academic year. ECF No. 68-5. The Pendency Order required that "retroactive to the filing of the DPC on August 22, 2024," DOE shall "fund the Student's 12-month tuition at [iBRAIN], including supplemental fees (related services), nursing services, and transportation services, during the pendency of this matter, in accordance with State Review Office Decision 23-302." ECF No. 96-2 at 5.

An FOFD was issued with respect to the DPC on March 5, 2025. Kapoor Decl., ¶ 9. This FOFD was appealed to the SRO on or about March 17, 2025. *Id.*

### C. Procedural History

Plaintiffs commenced this action on July 7, 2024. ECF No. 1. The case was originally assigned to Judge Jennifer H. Rearden but was reassigned to the undersigned on February 3, 2025.

At the outset of this litigation, Plaintiffs filed a proposed Order to Show Cause ("OTSC") seeking a Temporary Restraining Order ("TRO") and Preliminary Injunction, requesting relief regarding the convening of a resolution meeting between Plaintiffs and the DOE as part of the underlying administrative

proceedings.  ECF Nos. 6-7.  This request was denied without prejudice on July 17,
2024 (ECF No. 10), and then renewed on July 19, 2024 (ECF Nos. 12-15).  The
Court held argument on this motion on August 2, 2024, at which time Plaintiffs
requested a different form of relief with respect to the underlying administrative
proceedings.  ECF No. 35.  The Court set a briefing schedule with respect to this
amended motion for a TRO (*see id.*), but the motion for emergency relief was
ultimately withdrawn (ECF No. 60).

On August 30, 2024, Defendants filed a motion to dismiss the complaint on
the grounds that certain claims were moot, while others were not yet ripe.  ECF No.
49.  On September 23, 2024, Plaintiffs filed an Amended Complaint.  ECF No. 61
("Am. Compl.").  Defendants filed a motion to dismiss in part the Amended
Complaint, arguing that the declaratory relief claims relating to pendency
placement at iBRAIN were moot and that Plaintiffs were not entitled to an order
requiring immediate payment of unpaid pendency funding.  ECF No. 73.

On October 12, 2025, Plaintiffs filed another proposed OTSC, this time
seeking a preliminary injunction mandating DOE pay past due pendency amounts
for the Students.  ECF Nos. 67-69.  After this matter was referred for settlement
discussions before Magistrate Judge Sarah Netburn, however, the parties by
agreement withdrew both the pending motion to dismiss and the motion for a
preliminary injunction.  ECF No. 89.

Settlement discussions continued for some months, with the parties providing
joint reports to Judge Netburn as to their progress in narrowing the issues in

dispute.  During this period, DOE made substantial payments towards tuition and transportation for the Students.  Yet on March 3, 2025, Plaintiffs reported to the Court that the parties were unable to resolve the remaining outstanding issues, and that Plaintiffs would therefore be filing a motion for summary judgment.  ECF No. 100.

On March 7, 2025, Plaintiffs filed their motion for summary judgment.  ECF No. 102.  After the motion was fully briefed, on May 23, 2025, Plaintiffs filed another motion for a TRO and preliminary injunction.  ECF No. 122 ("TRO Mot.").  In the TRO motion, Plaintiffs sought "a declaration of scope of the current pendency placements at their current educational placements and funding of such services of Students A.F., O.C., and D.C., as has been requested by Plaintiffs' Motion for Summary Judgment."  ECF No. 123 ("TRO Mem.") at 1.  A hearing was held on Plaintiff's TRO motion on June 5, 2025, at which time the Court reserved decision.

## LEGAL STANDARDS

A grant of summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a reasonable jury could render a verdict in favor of the nonmoving party, a genuine dispute of material fact exists.  *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (citation omitted).  The moving party has the burden of demonstrating the absence of a question of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In forming this

assessment, the Court must view all facts "in the light most favorable" to the non-moving party.  *See Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c). "Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied."  *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (cleaned up).

The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Ultimately, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.[2]

---

[2] The Second Circuit has held that a different standard applies when the district court reviews an administrative decision in the IDEA context.  "A federal court reviewing a dispute over an [individualized education program] must base its decision on the preponderance of the evidence," deferring "to the administrative decision because the judiciary generally lacks the specialized knowledge and

## DISCUSSION

Plaintiffs seek summary judgment: (1) "declar[ing] iBRAIN to be each Student's pendency placement during the administrative and/or judicial proceedings" arising from their due process challenges to each respective Student's Individualized Education Program ("IEP") for the 2024–2025 extended SY; (2) an order requiring Defendants to "fund each Student's pendency placement at iBRAIN from the beginning of the 2024–2025 extended SY throughout the administrative and/or judicial proceedings related to their DPC, such funding to include tuition, transportation, and nursing where applicable"; and (3) an order requiring Defendants to remit payments "directly to iBRAIN and each of Plaintiff's respective service providers, including transportation costs and nursing, where applicable." *See* MSJ Br. at 2-3. For the reasons set forth below, this motion is granted in part and denied in part.

Before the Court proceeds, it is constrained to address the haphazard manner in which this case has been litigated. In evaluating the submissions made in support of the summary judgment and TRO motion, the Court had to engage in what it can only describe as a scavenger hunt to find relevant evidence. For

---

experience necessary to resolve persistent and difficult questions of educational policy." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (cleaned up). As this case does not involve a challenge to the underlying administrative decisions, but instead seeks only to enforce uncontested pendency orders, the ordinary Rule 56 standard applies. *See Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004).

example, Plaintiffs cited a Bellantoni Declaration in support of the TRO motion,
which does not exist anywhere in the record. Enrollment agreements and related
service agreements were buried within voluminous exhibits. Administrative orders
were scattered throughout the docket as attachments to various pleadings. Other
administrative orders, including SRO decisions, were not submitted at all; the
Court became aware of them only because they were alluded to at the hearing on
the TRO motion. The disorganized nature of these filings forced the Court to
expend significant additional resources and led to substantial delay in the
resolution of this case.

Moreover, although Plaintiffs represented that the TRO motion merely
sought an accelerated consideration of the issues presented in the motion for
summary judgment, an examination of the papers reveals serious inconsistencies
between the two. As discussed below, Plaintiffs conceded in their reply brief in
support of their motion for summary judgment that DOE had made all tuition
payments for the Students for the 2024-25 extended SY and that no amounts were
outstanding. Then in the papers supporting the TRO motion, submitted a mere five
weeks later, Plaintiffs argued that they were entitled, as part of tuition, to late fees.
In a similar vein, Plaintiffs brought summary judgment on behalf of only four of the
five students, conceding that "Defendants have fully funded L.V.F.'s placement at
iBRAIN, and Plaintiffs request no relief as to that [s]tudent." MSJ Br. at 1 n.1. In
the TRO notion, however, Plaintiffs seek emergency relief with respect to L.V.F.,
again related to a failure to pay late fees. TRO Mem. at 7-9.

In light of the Plaintiffs' position that tuition had been fully paid, the late fee issue was never briefed as part of the summary judgment motion. Nor have Plaintiffs explained the discrepancies between the two sets of motion papers. The Court nonetheless addresses the late fee issue further in its discussion of mootness.

## A. Plaintiffs' Pendency Claims Regarding Educational Placement and Tuition

The Court starts with the claims for relief presented in Plaintiffs' summary judgment motion regarding the Students' educational placement for the 2024-25 extended SY under their pendency orders and entitlement to reimbursement of tuition. The Court then turns to the new arguments regarding late fees raised in Plaintiffs' TRO motion.

### 1. Plaintiffs' Claims Regarding Educational Placement and Tuition Are Moot

This Court must first assess whether it has subject matter jurisdiction with respect to the claims relating to the Students' pendency placements at iBRAIN for the 2024-25 extended SY. The extended school year concluded in June 2025. The undisputed record on summary judgment establishes that DOE made all pendency tuition payments for these students with respect to the 2024-25 SY. There is thus no relief with respect to educational placement that that Court can grant. The Court dismisses these claims for lack of subject matter jurisdiction.

Article III of the United States Constitution requires that an actual case or controversy must exist at all stages of federal court proceedings to support a court's subject matter jurisdiction. *See Preiser v. Hewkirk*, 422 U.S. 395, 401 (1975). "The

hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Ramos v. New York City Dep't of Educ.*, 447 F. Supp. 3d 153, 157 (S.D.N.Y. 2020) (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)) (quotation marks omitted). "When 'the parties lack a legally cognizable interest in the outcome, a case is moot and the federal court is divested of jurisdiction over it.'" *Id.* (quoting *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001)).

In cases involving IDEA claims, "courts have dismissed as moot claims brought under the IDEA where an IHO or SRO has granted the plaintiff's requested relief prior to the court's adjudication." *Id.*; *see also F.O v. New York City Dep't of Educ.*, 899 F. Supp. 2d 251, 254 (S.D.N.Y. 2012) (finding the plaintiffs' claim to be moot because the DOE provided the requested relief). Similarly, pendency claims are routinely determined to be moot where the DOE has fully funded a student's tuition. *Lee v. Banks*, No. 1:23-CV-05800 (JLR), 2024 WL 1657908, at *4 (S.D.N.Y. Apr. 17, 2024); *Ramos*, 447 F. Supp. 3d at 158-59; *C.S. ex rel. R.S. v. N.Y.C. Dep't of Educ.*, No. 21-CV-10596, 2023 WL 2368987, at *9-*10 (S.D.N.Y. Mar. 6, 2023); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 362 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir. 2002).

The Declaration from Sapna Kapoor, a Senior Policy Advisor for DOE's Impartial Hearing Order Implementation Unit ("IHOIU"), establishes that DOE has paid the "entire amount owed" for tuition for students A.C., A.F., and D.C. Kapoor Decl., ¶¶ 6-8. With respect to O.C., Kapoor testified that, as of April 4,

2025, DOE had paid $211,188.59 towards the Student's pendency tuition, which represents all payments owed through March 31, 2025. *Id.,* ¶ 9. In connection with Plaintiffs' TRO motion, Plaintiffs submitted the Declaration of Arthur Mielnik, Director of Strategic Planning at iBRAIN, dated May 22, 2025. ECF No. 123-1 ("Mielnik Decl."). The Mielnik Declaration confirms that DOE subsequently made a tuition payment for O.C. on April 17, 2025, in the amount of $85,522.21. *Id.,* ¶ 17.

During summary judgment motion practice, Plaintiffs did not dispute DOE's allegations regarding the full payment of tuition and offered no countervailing evidence on this point.[3] To the contrary, in their summary judgment reply papers, Plaintiffs explicitly acknowledged that tuition for A.C., A.F., and D.C. had been paid "in full." ECF No. 117 ("Reply Br.") at 3 n.3; *id.* at 4 n.4; *id.* at 4 n.5. And at the hearing held in connection with the TRO motion, Plaintiffs confirmed that DOE had paid all of O.C.'s base tuition. Hr'g Tr. at 7:13-20. Plaintiffs' claims related to educational placement for the 2024-25 academic year and reimbursement of tuition are therefore moot.

Plaintiffs urge the Court to find that the "voluntary cessation" exception to the mootness doctrine applies. MSJ Br. at 12-14. "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can

---

[3] It must be noted that, although DOE's alleged failure to make pendency payments was at the crux of the summary judgment motion, Plaintiffs failed to submit any admissible evidence, in the form of declarations or otherwise, setting forth any amounts purportedly overdue. Rather, information regarding purported funding deficiencies was simply asserted in briefs without citation. All evidence in the record regarding payments made and owing came from Defendants' submissions.

demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (quotation omitted). "At bottom, the rule traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Id.* In other words, the doctrine is animated by a concern that a defendant might resume the challenged conduct as soon as the threat of judicial intervention has passed.

That concern is not present here. There is no reasonable expectation that the conduct at issue in this lawsuit—the failure to pay tuition to maintain the Students' pendency at iBRAIN during the 2024-25 SY—will recur. The school year in question has ended, so the Students' educational placement cannot be called into question by the DOE. In some cases, the pendency period itself is at an end, as an SRO has now entered. And as to relief, all tuition payments for the school year have been made, and those payments cannot be recouped by Defendants. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020) ("[T]he IDEA does not authorize a school district to recoup payments made for educational services pursuant to the stay-put provision.").

### 2. Late Fees

As discussed *supra*, in the TRO motion filed a month after briefing of the summary judgment motion was complete, Plaintiffs attempted to backtrack from their prior concessions regarding A.C., A.F., and D.C. In the TRO motion, Plaintiffs

argue that they are entitled to an order requiring DOE to pay, as "tuition," the late fees assessed by iBRAIN for the Students.  TRO Mem. at 4-9.  Plaintiffs offer no explanation for this change in position.  The dispute regarding late fees would present a live issue were the Court to consider arguments raised in the TRO motion to supplement the summary judgment briefing.

Yet it is clear that "arguments not raised in a party's brief are deemed waived." *Ohr Somayach/Joseph Tananbaum Educ. Center v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020); *c.f. Gao v. Barr*, 968 F.3d 137, 141 n.1 (2d Cir. 2020) ("It is well established that arguments raised for the first time at oral argument are deemed 'waived.'").  Nowhere in Plaintiffs' motion for summary judgment do they contend that late fees are outstanding or should be included as part of tuition.  To the contrary, they affirmatively represented that there are no outstanding tuition amounts owed as to three of these students.  As such, Plaintiffs intentionally waived their right to seek late fees by failure to brief this issue in their motion for summary judgment.

Even if the late fee argument had not been waived, however, and the Court were to reach the merits, the Court holds in the alternative that late fees are not properly included within the scope of the pendency orders.  The orders in question require payment of "tuition" only.  None of the administrative orders make reference to late fees.

Plaintiffs' position is that the pendency orders require tuition be paid in accordance with the terms of their private contracts with iBRAIN, and those

contracts provide for the assessment of late fees.  TRO Mem. at 3-9.  There are a number of issues with this argument.  First, it does not appear that the issue of late fees was raised by Plaintiffs during their DPC administrative proceedings or presented to the IHO in connection with the issuance of the pendency order.  A failure to exhaust administrative remedies can serve to deprive this Court of jurisdiction.  *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 204 (2d Cir. 2007).

Second, only one of the pendency orders, for Student A.F., states that tuition is to be paid "consistent with the contract."  ECF No. 61-4 at 8.  The remaining pendency orders simply require DOE to fund tuition.  ECF No. 61-6 at 5 ("The DOE shall fund Student's tuition at [iBRAIN]"); ECF No. 96-2 at 5 ("DOE shall fund the Student's 12-month tuition at [iBRAIN]").  Plaintiffs cannot read into the pendency orders additional requirements that the IHO neither considered nor ordered.

Third, even as to A.F., Plaintiffs' argument is unpersuasive.  The iBRAIN enrollment agreement does not categorize late fee penalties as part of "tuition."  The iBRAIN enrollment agreement sets forth two categories of tuition:  "base tuition," which includes the academic programming, an individual paraprofessional, and the school nurse (*see, e.g.*, ECF No. 61-1 at 34, ¶ 5); and "supplemental tuition," which includes "the cost of the Student's related services programming such as physical therapy, occupational therapy, speech-language therapy, vision education services, assistive technology services, music therapy, hearing education services and parent counseling and training" (*id.* at 34-35, ¶ 6).  The contract separately provides for

assessment of a late payment penalty:  "Upon the failure to pay in full any payment obligation due based on the terms of this Enrollment Contract ('Amount Outstanding') within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10.0%) of the Amount Outstanding (the 'Late Payment Amount') shall immediately be added to the Amount Outstanding."  ECF No. 61-1 at 36, ¶ 8(c).  The pendency order's reference to "tuition" does not naturally encompass the separate category of late penalty fees.

Finally, requiring Defendants to pay late fees in accordance with a private contract runs contrary to the principle that, under IDEA, DOE is only required to pay pendency tuition retroactively, not prospectively.  Under the terms of the private enrollment agreements with iBRAIN, payment for the academic year was due in three installments, with the final installment for the academic year ending in June 2025, due on January 2, 2025.  ECF No. 61-1 at 35; ECF No. 61-3 at 33; ECF No. 61-5 at 44; ECF No. 61-9 at 35.  The argument that DOE was obligated to make prospective tuition payments in January 2025 or incur substantial late fees based on a contract to which it is not a party and had no part in negotiating stands in direct contradiction of the Second Circuit's decision in *Mendez*.

Similar to the instant case, in *Mendez*, five parents and guardians filed suit on behalf of their children under section 1415(j) of IDEA, seeking to enforce the students' pendency placements at iBRAIN.  *Mendez*, 65 F.4th at 60.  And again, as in this case, DOE had made full tuition payments up until the time of motion practice.  *Id.* at 61.  The *Mendez* plaintiffs nonetheless sought an order requiring

DOE to make payments for tuition owing for the remainder of the academic school year.  *Id.*  The Second Circuit held that such claims were not ripe for adjudication, and that the district court therefore lacked subject matter jurisdiction to grant such relief.  *Id.*

The *Mendez* Court explained that pendency funding obligations expire at the conclusion of the underlying due process proceedings.  The "DOE's obligation will be extinguished once the students have final decisions—that is, once the IHO has issued a decision on the merits and that decision is no longer being appealed."  *Id.* at 61.  Under IDEA, courts therefore do not have jurisdiction to order Defendants to prospectively pay tuition that, depending upon the outcome and timing of the underlying administrative proceedings, may never be due and owing.  As the Second Circuit stated, "we cannot now ascertain the future, [and] we cannot assume that the DOE's legal obligation will continue through the remainder of the school year."  *Id.*  If a district court cannot order DOE to make prospective pendency payments, then a private contract between parents and the private school, to which DOE is not a party, cannot serve to alter DOE's legal obligations under IDEA to require prospective payments or risk substantial financial penalties.[4]

\* \* \*

---

[4] A.C.'s case illustrates this point.  The SRO decision for A.C. was issued on January 24, 2025.  ECF No. 104-1.  A.C.'s due process proceedings are thus at an end, and DOE's pendency obligations were "extinguished" at the time that order became final.  Any future payments owed by Defendants with respect to A.C.'s tuition after that date arise by operation of the final SRO decision, and not the pendency provision of section 1415(j).

All claims with respect to the Students' educational placement at iBRAIN during the pendency period, and corresponding claims for tuition, are therefore moot.[5] These claims are dismissed for lack of subject matter jurisdiction.

## B. Plaintiffs' Pendency Claims Related to Transportation and Nursing Services

While all claims relating to pendency placement at iBRAIN and related tuition payments are moot, live claims remain with respect to students A.F., O.C., and D.C.'s entitlement to reimbursement for nursing and transportation services for the 2024-25 extended SY under their pendency orders. Defendants do not dispute that A.F., under the terms of the relevant pendency order, is entitled to transportation costs. DOE has paid those costs through March 31, 2025, and has committed to continuing to pay additional costs in the ordinary course. Kapoor Decl., ¶ 7. Similarly, Defendants concede that O.C., under the terms of the pendency order, is entitled to both nursing and transportation costs. Defendants have accordingly paid those costs through March 31, 2025, and have committed to continuing to make payments in the ordinary course. *Id.*, ¶ 9. And Defendants further agree that D.C. is entitled to nursing costs under the terms of the relevant pendency order and have committed to continuing to pay in the ordinary course. *Id.*, ¶ 8. These Students are therefore entitled to declaratory relief with respect to their pendency claims for nursing and transportation services, and to an order

---

[5] A.C.'s claim for an order declaring her pendency at iBRAIN and seeking enforcement pursuant to section 1415(j) is moot for the additional reason that her pendency period is already at an end. *See supra* at n.4.

requiring Defendants to make payment of any outstanding balances in the ordinary course of business.

In their summary judgment papers, Plaintiffs contend that Student A.F. is owed the outstanding balance for the nursing service agreement with B&H. MSJ Br. at 4. The IHO denied A.F.'s request that the pendency order include nursing services, however. ECF No. 61-4 at 7. Accordingly, the Court denies the motion for summary judgment as to nursing services for A.F.

Regarding transportation for D.C., Defendants contend that "they have fully complied with this obligation in coordinating with DOE's Office of Pupil Transportation ("OPT") to offer [D.C.] transportation to and from iBRAIN during the 2024–2025 school year," but that this transportation was rejected by the family. ECF No. 111 ("Opp. Br.") at 3, 12. Plaintiffs counter that "this statement is entirely unsupported, and Defendants cite no record evidence." Reply Br. at 7.

The pendency order in this case states, in relevant part:

> The DOE also claims that it should be permitted to provide Student with transportation during the pendency of these proceedings rather than providing funding for such transportation to be provided by Private Agency. . . . The DOE is, of course, correct that it has the discretion to decide how to implement Student's educational program for purposes of pendency, so long as it is done in good faith. . . . That being said, the record before me does not demonstrate that the DOE has offered to provide Student with the transportation services at issue in this case. Instead, the DOE offered into evidence a letter indicating that the DOE would provide transportation as recommended in the IEP dated February 1, 2024. Ex. Pend-1 at 11. That, however, is not Student's pendency placement, which as discussed supra is the services outlined in the FOFD in Case No. 250961, Ex. Pend-3.

> Because the DOE has not demonstrated that it is able to
> provide the transportation services outlined in that
> FOFD, I will be ordering the DOE to fund transportation
> from Private Agency until such time as it demonstrates
> that it is able to provide the transportation services to
> which Student is entitled.

ECF No. 61-6 at 4.

The only evidence submitted by DOE on whether such equivalent transportation services were ultimately offered to D.C. is the Kapoor Declaration, which states: "The transportation portion of this Student's pendency order was to be implemented by the DOE's Office of Pupil Transportation ("OPT")." Kapoor Decl., ¶ 8. Plaintiffs are correct that this passive-voice statement does not affirmatively state that transportation services of the kind specified by the pendency order were actually offered to or provided by OPT to D.C.

Defendants point to *Ventura de Paulino v. New York City Dep't of Educ.*, as support for the proposition that "it is the City, not the Parents, that is authorized to decide how (and where) the Students' pendency services are to be provided." 959 F.3d at 533. Defendants argue that they were entitled to provide transportation to D.C. through their own service provider. Opp. Br. at 12.

This argument misses the mark. Defendants are entitled to provide equivalent transportation services to D.C. as Sisters Travel. But just as it did before the IHO, DOE failed to offer any evidence to this Court that OPT was capable of providing equivalent transportation services to D.C., and that such services were in fact offered to the student by OPT and turned down. The Court therefore holds that D.C.'s pendency order includes transportation services to be

provided by his private provider, Sisters Travel, and that Defendants are obligated to reimburse D.C. for those transportation costs.

Defendants also point out that, in the FOFD ultimately issued with respect to D.C.'s IEP for the 2024-25 academic year, the IHO determined that D.C. was not entitled to transportation services. Opp. Br. at 12-13. Yet the ultimate decision on the merits of D.C.'s DPC challenge has no bearing on pendency. Under section 1415(j), pendency is determined by a child's "then-current educational placement" at the time the DPC was filed. The "then-current educational placement" is the one either "provided for in the last educational program to which her parents and the Department both agreed" or in a final unappealed administrative decision that "adjudicat[ed] the IEP dispute in the parents' favor." *Moonsammy v. Banks*, No. 24 CIV. 2616 (PAE), 2024 WL 2831042, at *6 (S.D.N.Y. June 3, 2024). For D.C., as the parties agreed, pendency was properly based upon an FOFD issued for D.C. for the 2023-24 academic year, which did include transportation services. ECF No. 68-6.

This brings us to the question of remedy. D.C. seeks an order compelling immediate payment of those past due transportation costs. Defendants argue that such an order is inappropriate, and that it will pay any amounts the Court determines are due in the ordinary course of payment processing. Opp. Br. at 13.

The Court notes again that Plaintiffs failed to submit any admissible evidence regarding the outstanding amounts due. This failure alone could have resulted in the denial of the motion for summary judgment. *Zimmerman, et al. v. Banks, et al.*, No. 23 Civ 9003 (JGK), 2024 WL 4882370, at *6 (S.D.N.Y. Nov. 25,

2024) (denying motion where party "failed to attach or cite to any admissible evidence in connection with [their] motion for summary judgment."). Yet, because the transportation contract is in the record, which establishes the cost of transportation services for the 2024-25 SY as $280,757.00 (ECF No. 61-5 at 51), and Defendants concede that they have not paid any amounts towards D.C.'s transportation, the Court is able to determine the amount of reimbursement D.C. is owed notwithstanding the evidentiary deficiencies in Plaintiffs' submissions.

With respect to Defendants' position regarding timing of payment, Defendants' rely on the Second Circuit's decision in *Mendez*. *Mendez*, like the instant case, involved iBRAIN students seeking a preliminary injunction requiring DOE to make payments due under pendency orders. The Second Circuit held:

> [This] appeal present[ed] a question of statutory interpretation: whether the stay-put provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j), entitles Plaintiffs to an automatic injunction directing the DOE to fund their children's pendency placements. We hold that it does not. The IDEA's stay-put provision entitles families to automatic relief with respect to educational placement but not with respect to payments. Parents seeking educational payments may still be entitled to automatic injunctive relief if they can show that a delay or failure to pay has threatened their child's placement. But absent such a showing, the IDEA does not compel the state to accelerate its disbursement of funds.

65 F.4th at 59. The Second Circuit agreed that section 1415(j) functions as an "automatic injunction," with no requirement to show irreparable harm in order to maintain an educational placement. *Id.* at 63-64. It further agreed that DOE is obliged to fund children's educational placements during the duration of

administrative proceedings. *Id.* But *Mendez* held that nothing in section 1415(j) entitled Plaintiffs to immediate payment or reimbursement. *Id.* Rather, absent a showing that a delay in payment had placed the student's placement at iBRAIN at risk, DOE "is not obliged to circumvent its ordinary payment procedures." *Id.* at 63.

In reaching this decision, the Second Circuit reasoned IDEA does not "require circumvention of ordinary payment procedures." *Id.* Recognizing the "practical realities of bureaucratic administration," the *Mendez* Court observed that DOE receives "thousands of fundings requests under the IDEA at the start of each school year." *Id.* Agencies need time to process and pay submitted invoices. *Id.* "If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement." *Id.*

Plaintiffs acknowledge that *Mendez* controls but argue that *Mendez* is distinguishable because in that case, DOE agreed that the funds were owed and would be paid in due course. TRO Mem. at 16-18. Here, DOE and Plaintiffs disagreed as to the scope of transportation services that D.C. was to receive under the current pendency orders. Plaintiffs urge this Court to find that *Mendez* simply "added a condition precedent to receiving an automatic injunction under [section] 1415(j) for immediate pendency funding when the school district does not dispute the student's entitlement to pendency." *Id.* at 18.

The Court disagrees that *Mendez*'s holding is as limited as Plaintiffs suggest, or that *Mendez* is inapplicable whenever there is a dispute as to pendency. Under

27

the specific facts of this case, however, where the school year is at an end, all services under the governing contract have been rendered, and reimbursement for those services has been delayed for many months, to order Defendants to pay in the "ordinary course" makes little sense. The entirety of the costs related to D.C.'s transportation services for the academic year are long past due and must now be reimbursed in full.[6]

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the motion for summary judgment.

Plaintiffs' claims related to educational placement and reimbursement of tuition are DISMISSED AS MOOT.

The Court declares that Student O.C. is entitled under the relevant pendency order to nursing and transportation services for the 2024-25 extended SY, until such time as any administrative or judicial challenges to the Student's IEP for the 2024-25 extended school year are finally resolved. Defendants are required to fund those transportation and nursing services, with payments to be processed in the ordinary course.

The Court further declares that Student A.F. is entitled under the relevant pendency order to transportation services for the 2024-25 extended SY, until such

---

[6] The Court's ruling with respect to payment of transportation services refers to timing alone. To the extent that, in the "ordinary course" of processing funding under pendency provisions, DOE requires submission of invoices or other paperwork, this Opinion and Order does not nullify those requirements.

time as any administrative or judicial challenges to the Student's IEP for the 2024-25 extended school year are finally resolved.  Defendants are required to fund those transportation services, with payments to be processed in the ordinary course. A.F.'s motion for summary judgment with respect to nursing services is DENIED.

The Court further declares that Student D.C. is entitled under the relevant pendency order to nursing and transportation services for the 2024-25 extended SY, until such time as any administrative or judicial challenges to the Student's IEP for the 2024-25 extended school year are finally resolved.  Defendants are required to fund D.C.'s nursing services, with payments to be processed in the ordinary course. Defendants shall pay the total amount outstanding for D.C.'s transportation services for the 2024-25 extended SY within 30 days of the date of this Opinion and Order.

The Clerk of Court is directed to enter judgment in accordance with this Opinion and Order, to mark all outstanding motions as terminated, and to close the case.

      SO ORDERED.

Dated:  August 4, 2025
      New York, New York

                    JEANNETTE A. VARGAS
                    United States District Judge